IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMBER MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | **2:23-CV-834** |
| | ) | |
| v. | ) | |
| | ) | **JUDGE MARILYN J. HORAN** |
| CITY MISSION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff, Amber Miller, filed the present lawsuit against Defendant, Washington City Mission, Inc. on May 17, 2023. (ECF No. 1). Ms. Miller filed an Amended Complaint on September 4, 2023. The Amended Complaint alleges claims for sex, disability, and race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-2(a)(1), the Americans with Disabilities Act ("ADA"), as amended 42 U.S.C. § 12010 et seq., Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §1981, et seq., the Pennsylvania Human Relations Act ("PHRA"), retaliation under the various statutes, and creation of a hostile work environment. Presently, before the Court, is Defendant's Partial Motion to Dismiss Ms. Miller's Amended Complaint (ECF No. 15). The Partial Motion to Dismiss has been fully briefed and is ripe for decision.

For the reasons below, Defendant's Motion to Dismiss will be granted in part, and denied in part. Defendant's Partial Motion to Dismiss will be granted as to Count I, Ms. Miller's race discrimination claims. Defendant's Partial Motion to Dismiss will be denied as to Counts III, IV, V, and VI.

I.    **Statement of Facts**

1

Amber Miller is a thirty-nine-year-old black woman who began working for the Washington City Mission, Inc. ("City Mission") on August 22, 2016, where she worked as a manager of the City Mission's Woman's and Children's Program. (ECF No. 13, at ¶¶ 10, 12. 13). Ms. Miller pleads that her immediate supervisor, Leah Deitreich, a white woman, and Dennis Kenneday (sic), City Mission's CFO, were directly involved in her employment (*Id.* ¶¶ 14, 15). Ms. Miller alleges that on or about November 23, 2020, she took medical leave because of COVID-19, pneumonia, and rheumatoid arthritis. (*Id.* ¶ 16). She alleges she made requests for leave under the FMLA, but never received any response. (*Id.* ¶ 17). Ms. Miller alleges that, while she was off, her supervisor repeatedly called her questioning the necessity of her leave. (*Id.* ¶ 18). Ms. Miller returned to work on or about December 18, 2020. (*Id.* ¶ 19). She alleges that upon her return she was further questioned about her health conditions. (*Id.*). She also alleges that she felt targeted, and that other white employees were not treated in the same manner. (*Id.* ¶ 20). She further alleges that she felt that her supervisors were extra critical of her work compared to male employees. (*Id.* ¶ 27, 28). Finally, Ms. Miller alleges that she continued to be treated differently and that the tone, demeanor, and evaluation of her work was unreasonable, when compared to the accepted standards at City Mission. (*Id.* ¶ 29).

On or about April 10, 2021, Ms. Miller filed a complaint with the local chapter of the National Association for the Advancement of Colored People ("NAACP"), alleging an increasingly hostile work environment, harassment, and intimidation. (*Id.* ¶ 30). On April 22, 2021, representatives from the NAACP met with Ms. Miller and City Mission to discuss the claims. (*Id.* ¶ 31). After the meeting, on the same day, Ms. Miller was placed on administrative leave pending City Mission's investigation of the claims. (*Id.* ¶ 32). On May 5, 2021, City Mission terminated Ms. Miller's employment for negligence, unprofessionalism, and poor

judgment. (*Id.* ¶ 33). Ms. Miller alleges that she never received any negative written warning before her termination. (*Id.* ¶ 36). On or about June 4, 2021, Ms. Miller filed a Charge with the EEOC against City Mission. (*Id.* ¶ 39). In the EEOC Charge, Ms. Miller only checked the boxes for "sex" and "retaliation." (ECF No. 16-1). Also in the Charge, Ms. Miller mentioned that she made a complaint to the NAACP for discrimination based on "hostile work environment, harassment, and intimidation." (*Id.*). On February 16, 2023, Ms. Miller checked the EEOC Portal and discovered that a right to sue letter was uploaded by the EEOC on December 15, 2022. (ECF No. 13, at ¶ 40); (ECF No. 13-1). She alleges that she never received the right to sue letter, either by mail or email, and that she first learned about the letter on February 16, 2023. (*Id.* ¶ 41).

## II.     Relevant Legal Standards

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a prima facie case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Min. Co. v. Fox*

*Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010)).

### III.   Discussion
#### A.   Count I: Title VII and PHRA Race Discrimination Claims

City Mission argues that Ms. Miller did not assert any race discrimination claim in her EEOC Charge; and therefore, she failed to exhaust her administrative remedies for such claims. (ECF No. 16, at 6). City Mission further argues that Ms. Miller fails to establish a prima facie case for race discrimination. (*Id.*). Ms. Miller argues that her reference to the NAACP in the EEOC Charge is enough to have given City Mission notice of her race discrimination claims; and thus, she exhausted her administrative remedies. (ECF No. 20, at 9).

To establish a Title VII claim for race discrimination, "a plaintiff must exhaust all required administrative remedies." *Houle v. Walmart Inc.*, 447 F. Supp. 3d 261, 276 (M.D. Pa. 2020) (quoting *Robinson v. Dalton,* 107 F.3d 1018, 1020 (3d Cir. 1997)). Under Title VII, a plaintiff must file a Charge of Discrimination with the EEOC within 300 days of the alleged unlawful employment practice before filing a complaint in court. *Id.* "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court. *Cooper v. Pa. Hum. Rels. Comm'n,* 578 F. Supp. 3d 649, 663 (M.D. Pa. 2022) (quoting *Antol v. Perry*, 82 F.3d 1297, 1296 (3d Cir. 1996). A claim has been administratively exhausted when the specifics of a Charge with

the administrative agency "fairly encompass a claim" and would put the agency and defendant employer "on notice" of that claim. *Mammen v. Thomas Jefferson Univ.*, 462 F. Supp. 3d 518, 529 (E.D. Pa. 2020). The test to determine whether a plaintiff needed to exhaust her administrative remedies is whether or not the facts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising from the same. *Cooper,* 578 F. Supp. 3d at 663.

 Ms. Miller did not properly exhaust her administrative remedies for her racial discrimination claims. Ms. Miller did not check the box for "Race" when she filed her initial Charge with the EEOC, nor when she filed her Amended Charge. (ECF, No. 16-1). Moreover, Ms. Miller did not assert, in the Charge, that she was discriminated against because of her race. *Id.* On the other hand, Ms. Miller explicitly alleges that she was discriminated against by City Mission based on "sex, [F]emale, retaliation for participating in protected activity, and/or due to a disability in violation of Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disabilities Act of 1990, as amended." *Id.* Ms. Miller argues that, because she mentioned the NAACP in her EEOC Charge, said reference is enough to infer that she properly exhausted her administrative remedies for race discrimination. (ECF No. 20, at 9). However, the NAACP's Civil Rights Complaint Form allows for complaints based on race, color, national origin, age, disability, and many other characteristics.[1] Thus, NAACP complaints are not exclusive to racial complaints. Ms. Miller could have checked the box for "Race" on her EEOC Charge or have been more specific in describing her claims in the Charge, but she did not do so. Ms. Miller's claim for race discrimination was not within the scope of her EEOC Charge; as

---

[1] *See* NAACP Civil Rights Complaint Form, at 2, https://naacpphillybranch.org/wp-content/uploads/2021/09/Civil-Rights-Complaint-Form.pdf.

such, said claim will be dismissed. Further, the above analysis also applies to Ms. Miller's racial discrimination claim under the PHRA; as such, said claim will also be dismissed. As amendment would be futile for these claims, they will be dismissed with prejudice.

### B. Timeliness of Claims

City Mission argues that Counts III, IV, V and VI, are untimely because Ms. Miller did not file this action within 90 days from the December 15, 2022 Notice of Right to Sue Letter that was issued by the EEOC. (ECF No. 16, at 10). Ms. Miller argues that she did not receive the Notice of Right to Sue Letter until she opened it on February 16, 2023, and thus, her claims are timely. (ECF No. 20, at 12).

"The time for the filing of a complaint begins to run when the plaintiff has notice of the EEOC's decision, which usually occurs on the date [s]he receives a right-to-sue letter from the agency." *Paniconi v. Abington Hosp. Jefferson Health*, 604 F. Supp. 3d 290, 291 (E.D. Pa. 2022) (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999)). This letter also informs the claimant that she has ninety days after receipt in which to file suit. *Id.* "While the ninety-day rule is not a jurisdictional predicate, in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Id.*

Ms. Miller's Notice of Right to Sue Letter from the EEOC states, "[r]eceipt [of the letter] generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice." (ECF No. 13-1). Ms. Miller alleges that the first time she learned of the right-to-sue letter was on February 16, 2023, when she opened it on the EEOC portal. (ECF No. 13, at 6). City Mission argues that the EEOC sent both an email and U.S. postal mail, that contained the right-to-sue letter, on December 15, 2022. (ECF No. 16, at

11). Ms. Miller alleges that she did not receive the right-to-sue letter either in the mail or through email; and, the first time she opened it was through the EEOC portal on February 16, 2023. (*Id.*). City Mission further argues that the EEOC sent Ms. Miller another email reminding her of the December 15, 2022 right-to-sue letter on December 23, 2022 (ECF No. 16, at 11). City Mission cites *Paniconi v. Abington Hosp. Jefferson Health*, 604 F. Supp. 3d 290 (E.D. Pa. 2022) and *McNaney v. Sampson and Morris Grp.*, *Inc.*, 2022 WL 1017388 (W.D. Pa. 2022) as support for their position that the email and regular mail, sent to Ms. Miller, qualified as receipt of the December 15, 2022 right-to-sue letter. In those cases, however, the right-to-sue letter was sent to each plaintiff's counsel, and their counsel acknowledged receipt of emails, which indicated that the right-to-sue letter was attached, or at least that an important document was attached. *See Paniconi*, 604 F. Supp. 3d at 292-93; *McNaney* 2022 WL 1017388, at *4.

In this case, Ms. Miller did not have counsel until after she opened the right-to-sue letter through the EEOC portal on February 16, 2023. Ms. Miller's allegations that she never received an email or physical letter that contained the right-to-sue letter, distinguish her circumstances from the cases argued by City Mission. At this stage, assuming the alleged facts as true, Ms. Miller has alleged sufficient facts that she did not "receive" the right-to-sue letter until February 16, 2023. Thus, such is the date when the 90-day filing window began tolling. Ms. Miller filed her complaint on May 17, 2023, 90 days after she opened the right-to-sue letter on the EEOC portal. Therefore, at this stage, this Court must find that Counts III, IV, V, and VI, are sufficiently timely and Defendant's Partial Motion to Dismiss these claims will be denied, without prejudice.

### C. **PHRA Claims**

City Mission argues that Ms. Miller failed to exhaust her administrative remedies under the PHRA as to all of her claims because she did not indicate in her Amended Complaint that she dual-filed the Charge with the PHRA. (ECF No. 16, at 14). Ms. Miller argues that City Mission's own exhibit indicates that she filed her Charge with the PHRA, and that her alleged PHRA claims are mentioned throughout the complaint. (ECF No. 20, at 12).

In the Amended Complaint, Ms. Miller alleges that she is suing under the PHRA, in addition to other statutes, at Count I, III, VI, V, and VI. (*Id.* at 6, 9, 10, 12). Further, the EEOC Amended Charge, that was included as Defendant's Exhibit A, indicates that Ms. Miller filed with both the EEOC and the PHRA on August 6, 2021. (ECF No. 16-1). The Charge itself indicated that Ms. Miller also filed with the PHRC. *Id.* If the PHRC does not issue a response to a charging party within one year of their complaint, then the charging party is considered to have exhausted administrative remedies under the PHRA. 43 P.S. § 962(c)(1). Ms. Miller filed her complaint with the Court on May 17, 2023. (ECF No. 1). Such date is over a year from the filing of Ms. Miller's EEOC Charge. As such, Ms. Miller exhausted her administrative remedies under the PHRA, and said claims are properly before the Court. City Mission's Partial Motion to Dismiss all of Ms. Miller's PHRA claims will be denied.

### IV. Conclusion

For the reasons stated above, City Mission's Partial Motion to Dismiss will be granted in part and denied in part. Ms. Miller's Title VII and PHRA claims for race discrimination, Count I, will be dismissed, with prejudice. City Mission's Partial Motion to Dismiss will be denied as to Ms. Miller's Title VII, ADA, PHRA, retaliation, and hostile work environment claims, at Counts III, IV, V, and VI. A separate Order will follow.

DATE: _____12/28/2023_____

*Marilyn J. Horan*
Marilyn J. Horan
United States District Judge